UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MARK LEE BINGHAM,** | } |
| Plaintiff, | } |
| v. | } Case No.: 4:15-CV-00458-MHH |
| **CAROLYN W. COLVIN,** **Commissioner of the** **Social Security Administration,** | } |
| Defendant. | } |

## **SUBSTITUTED MEMORANDUM OPINION**[1]

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff Mark Lee Bingham seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied his claims for a period of disability and disability insurance benefits and supplemental security income. After careful review, the Court remands this action for further proceedings.

**I.  PROCEDURAL HISTORY**

Mr. Bingham applied for a period of disability and disability insurance benefits on October 12, 2012. (Doc. 7-6, pp. 2-5). Mr. Bingham applied for supplemental security income on November 16, 2012. (Doc. 7-6, pp. 6-11). Mr.

---

[1] This substituted memorandum opinion corrects two case citations on pages 12 and 13. Otherwise, this opinion is identical to the opinion that the Court entered on August 31, 2016.

Bingham alleges that his disability began on July 1, 2012. (Doc. 7-6, pp. 2, 6). The Commissioner initially denied Mr. Bingham's claims on February 22, 2013. (Doc. 7-5, pp. 2-11). Mr. Bingham requested a hearing before an Administrative Law Judge (ALJ). (Doc. 7-5, pp. 12-13). The ALJ issued an unfavorable decision on June 24, 2014. (Doc. 7-3, pp. 18-20). On February 24, 2015, the Appeals Council declined Mr. Bingham's request for review (Doc. 7-3, pp. 2-4), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g) and § 1383(c).

## II.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the

ALJ.  *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If the ALJ's factual findings are supported by substantial evidence, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings."  *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Bingham has not engaged in substantial gainful activity since July 1, 2012, the alleged onset date. (Doc. 7-3, p. 23). The ALJ determined that Mr. Bingham suffers from the following severe impairments: intra-articular loose body and chondromalacia of the medial tibial plateau; right paracentral disc protrusions; moderate radiculopathy, right cervical spine; degenerative and arthritic changes, cervical and lumbar spine; mixed hearing loss, left ear; sensorineural hearing loss, right ear; and tinnitus in right ear due to the greater high frequency hearing loss. (Doc. 7-3, p. 24). The ALJ determined that Mr. Bingham suffers from the following non-severe impairments: hypertension; depression; and history of substance abuse. (Doc. 7-3, p. 24). Based on a review of the medical evidence, the ALJ concluded that Mr. Bingham does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 7-3, p. 26).

Next, the ALJ evaluated Mr. Bingham's residual functional capacity in light of his impairments. The ALJ determined that Mr. Bingham has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can alternate between sifting, standing, and walking at up to 60-minute intervals, while remaining at his workstation. The claimant can sit at least six hours over the course of an eight-hour

4

> workday. The claimant can stand and/or walk a total of at least six hours over the course of an eight-hour workday. The claimant cannot stand or walk on uneven terrain. The claimant can frequently use his upper extremities for reaching in all directions, pushing, pulling, handling, and fingering. The claimant cannot climb ladders, ropes, poles, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, and crouch. The claimant cannot crawl. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery. The claimant can occasionally operate motorized vehicles. The claimant can occasionally work while subject to vibration. The claimant cannot perform work activity that requires his response to rapid and/or frequent multiple demands. The claimant can perform work in noise levels such as found in an office environment.

(Doc. 7-3, pp. 26-27).

Based on this RFC, the ALJ concluded that Mr. Bingham is not able to perform his past relevant work as a timber cruiser, logging equipment operator, logging truck driver, or supervisor (logging). (Doc. 7-3, p. 32). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Bingham can perform including assembler, wire worker, and non-postal mail clerk. (Doc. 7-3, p. 33). Accordingly, the ALJ determined that Mr. Bingham has not been under a disability within the meaning of the Social Security Act. (Doc. 7-3, p. 33).

## IV. ANALYSIS

Mr. Bingham argues that he is entitled to relief from the ALJ's decision because the ALJ failed to properly evaluate the opinion from his treating neurologist, Dr. Walid W. Freij. The Court agrees.[2]

An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's own records. *See Winschel*, 631 F.3d at 1179. An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159.

On January 7, 2014, Mr. Bingham's treating neurologist, Dr. Freij, opined that Mr. Bingham was totally and permanently disabled. (Doc. 7-9, p. 39). Prior to this assessment, Dr. Freij treated Mr. Bingham on multiple occasions.

---

[2] Mr. Bingham also argues that the ALJ failed to properly consider medical evidence from examining physician, Dr. Dallas Russell. Because the Court remands this case for further proceedings based on Mr. Bingham's first argument, the Court does not address at length Mr. Bingham's second argument.

On February 7, 2012, Mr. Bingham complained of neck pain and lower back pain that has been present for nearly 30 years. (Doc. 7-9, p. 33). Mr. Bingham reported that his "symptoms have increased progressively" since "doing physical jobs such as driving doziers [sic] and skidders." (Doc. 7-9, p. 33). Mr. Bingham told Dr. Freij that the pain would radiate to his shoulders and arms. (Doc. 7-9, p. 33). Mr. Bingham also reported that his lower back pain would radiate "to the lower extremities, especially in the posterior aspect of the thighs and legs." (Doc. 7-9, p. 33). Dr. Freij stated that "[t]ingling sensation was noted in the feet." (Doc. 7-9, p. 33). Dr. Freij observed that Mr. Bingham presented "tenderness […] over the paraspinal muscles in the C spine and LS spine and tenderness over the Trapezius muscles bilaterally." (Doc. 7-9, p. 34). Dr. Freij noted that November 29, 2011 MRI of the cervical spine showed evidence of "C5/C6 and C6/C7 right paracentral disc spurring and protrusions." (Doc. 7-9, p. 34). A November 29, 2011 MRI of the lumbar spine revealed no abnormalities. (Doc. 7-9, p. 34).

Based on his February 7, 2012 examination, Dr. Freij made the following diagnoses:

1. Neck pain with radiating pain to the upper extremities along with numbness sensation in the thumbs and thenar aspects of the palms. These are suggestive of C6 radiculopathy. A MRI of the C spine revealed C5/C6 and C6/C7 right paracentral disc protrusion.

2. Lower back pain with radiating pain to the lower extremities suggestive of LS spinal stenosis, but there is no evidence on the

>MRI of the LS spine of any abnormalities. Most likely this discomfort is muscular in nature.

(Doc. 7-9, p. 35). Dr. Freij prescribed Flerxeril, Elavil, and OxyContin. (Doc. 7-9, p. 35).

On March 8, 2012, Dr. Freij saw Mr. Bingham for a follow-up visit. Mr. Bingham reported that his back and neck pain improved on Oxycontin, but Flexeril was making him drowsy in the morning. (Doc. 7-9, p. 32). Mr. Bingham's motor power was 5/5, but Dr. Freij found tenderness in Mr. Bingham's paraspinal muscles. (Doc. 7-9, p. 32). Dr. Freij diagnosed "[d]egenerative and arthritic changes in the [cervical] spine and [lumbar] spine." (Doc. 7-9, p. 32). Dr. Freij continued Mr. Bingham on Oxycontin and Elavil, but changed Flexeril to Baclofen. (Doc. 7-9, p. 32).

On January 9, 2013, Mr. Bingham presented with neck pain, bilateral hand pain with numbness, tingling and weakness "that has persisted for the past years or so." (Doc. 7-9, p. 29). Dr. Freij noted that Mr. Bingham suffered from a history of high blood pressure, back pain, and neck pain but that he was independent in activities of daily living and ambulation. (Doc. 7-9, p. 29). During this visit, Mr.

Bingham underwent a nerve conduction study which revealed "evidence of moderate C6 radiculopathy on the right side." (Doc. 7-9, p. 37).[3]

The ALJ reviewed Dr. Freij's medical notes in his assessment (Doc. 7-3, pp. 27-28); however, in his analysis of the medical evidence, the ALJ did not mention Dr. Freij's opinion that Mr. Bingham is disabled, and the ALJ did not identify the weight he assigned to Dr. Freij's opinion. (*See* Doc. 7-3, pp. 27-32). An "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The Commissioner correctly notes that disability opinions are not medical opinions but are administrative findings reserved to the Commissioner. (Doc. 10, pp. 7-8, citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)). Still,

> opinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner. If the case record contains an opinion from a medical source on an issue

---

[3] The Commissioner points out that Mr. Bingham visited Dr. Freij only once after the alleged onset of his (Mr. Bingham's) disability. (Doc. 10, p. 7). That is true, but Dr. Freij's treatment of Mr. Bingham's back and neck pain in 2012 is not irrelevant.

9

> reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

SSR 96-5P, 1996 WL 374183, at *3.

Dr. Freij's opinion is consistent with at least some of the medical evidence in the record, including the report of consultative examiner, Dr. Dallas Russell. Dr. Russell performed a consultative examination on Mr. Bingham on April 4, 2014. (Doc. 7-9, pp. 78-79). When reviewing the history of Mr. Bingham's back and neck pain, Dr. Russell stated:

> For the past few years, [Mr. Bingham] has had pretty severe low back pain, but also neck pain. He has numbness and tingling that goes down into the arms. He also has severe low back pain. He can have pain that radiates down the legs into the buttocks area. Particularly over the past 5 years, his problems have been severe. As a result, he has been on chronic pain management and apparently it is anticipated that he will need both back and neck surgery in the future. These troubles affect him in many ways. He cannot carry or lift things well and he has trouble with sitting or standing or walking for long periods of time. He has trouble riding in a car. He also has balance disturbance. . . .

(Doc. 7-9, p. 78).

Dr. Russell found that Mr. Bingham "has difficulty with heel and toe walking. He cannot squat and rise." (Doc. 7-9, pp. 78-79). Mr. Bingham had trouble getting on and off the examination table. Mr. Bingham had 5/5 muscle strength, but Dr. Russell noted that "[s]trength testing was limited somewhat by the pain that [Mr. Bingham] has." (Doc. 7-9, p. 79). Dr. Russell also found that

Mr. Bingham has "significant loss with range of motion in both neck and the lower back region." (Doc. 7-9, p. 79).[4]

After the examination, Dr. Russell provided the following impression of Mr. Bingham's condition:

> Lower back pain, neck pain, right knee pain, right acoustic schwannoma, hearing loss, migraine headaches, cervical radiculopathy and dizziness. He has trouble lifting, carrying, pushing or pulling objects. He cannot sit, stand, or walk for long periods of time. He has trouble with climbing, stooping, bending, balancing, crawling, kneeling and crouching. He has some trouble with fine motor skills and hands. He has trouble with overhead and forward reaching. He has diminished hearing.

(Doc. 7-9, p. 79).

Dr. Russell also completed a medical source statement in which he opined that Mr. Bingham could never lift more than 20 pounds and could never carry more than 10 pounds. (Doc. 7-9, p. 80). Dr. Russell concluded that Mr. Bingham could sit for thirty minutes, stand for fifteen minutes, and walk for fifteen minutes at one time without interruption and that Mr. Bingham could sit for two hours, stand for one hour, and walk for two hours in an 8-hour work day. (Doc. 7-9, p. 81). Dr. Russell opined that Mr. Bingham could never reach overhead and could

---

[4] Dr. Russell's report also states that Mr. Bingham "cannot walk without an assistive device." (Doc. 7-9, p. 78). As noted by the ALJ, this statement is inconsistent with Dr. Russell's indication that Mr. Bingham does not require the use of a cane to ambulate. (Doc. 7-9, p. 81). Two weeks after the ALJ issued his decision, Dr. Russell submitted a letter apologizing for the inconsistency and explaining that his examination notes contain a typographical error or that he inadvertently used the wrong term. Dr. Russell confirmed in the letter that his examination notes should state that Mr. Bingham can walk without an assistive device. (Doc. 7-9, p. 86).

occasionally handle, finger, feel, and push and pull.  (Doc. 7-9, p. 82).  Dr. Russell also found that Mr. Bingham could occasionally operate foot controls and climb stairs or ramps, but he could never climb ladders or scaffolds, balance, stoop, bend, kneel, crouch, or crawl.  (Doc. 7-9, pp. 82-83).  Dr. Russell explained that Mr. Bingham could perform most activities of daily living; however, Dr. Russell noted that Mr. Bingham could not walk a block at a reasonable pace on rough or uneven surfaces or climb a few steps at a reasonable pace with the use of a single hand rail.  (Doc. 7-9, p. 85).  Dr. Russell stated that Mr. Bingham's limitations had been present since 2007 and that they lasted or will last for 12 consecutive months.  (Doc. 7-9, p. 85).

The ALJ may have implicitly considered and rejected Dr. Freij's statement that Mr. Bingham is disabled.[5]  But "without clearly articulated grounds for such a rejection," the Court "cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."  *Winschel*, 631 F.3d at 1179 ("[W]hen the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might

---

[5] After reviewing the medical evidence in the record, the ALJ cited the proper standards under which he was required to review the opinion evidence.  (Doc. 7-3, p. 30).  However, Dr. Russell's opinion is the only opinion to which the ALJ afforded specific weight.  (Doc. 7-3, pp. 30-31).  The Court has considered whether the ALJ's failure to address Dr. Freij's statement regarding total disability might fairly be characterized as harmless error.  Given the overall record and given the ALJ's statement that "[a] review of the records in this case reveals no restrictions recommended by any treating physician," (Doc. 7-3, p. 31), the Court concludes that remand is appropriate in this case.

have supported the ALJ's conclusion.") (internal quotation marks and citation omitted).  Accordingly, the Court remands this case to the Commissioner.

On remand, the ALJ should explicitly explain the weight accorded to Dr. Freij's opinion.  *Id.*; *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) ("The [ALJ] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."); *Baez v. Comm'r of Soc. Sec.*, --- Fed. Appx. ----, 2016 WL 4010434, at *4 (11th Cir. July 27, 2016) (finding that the ALJ committed reversible error by failing to assign weight to a treating physician's "comprehensive" treatment notes and stating that "[t]he ALJ needed to assign some weight to Dr. Chin's opinion as a treating physician and, if necessary, explain why that weight is less than substantial or controlling").

### V.  CONCLUSION

For the reasons discussed above, the Court remands the decision of the Commissioner for further administrative proceedings consistent with the Court's memorandum opinion.

**DONE** and **ORDERED** this September 1, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE